UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

KIRKLAND KNIGHTSBRIDGE, LLC,                              No. 06-10628

                                        Debtor(s).
_____/

360 VIANSA, LLC,

                              Plaintiff(s),

                 v.                                      A.P. No. 06-1156

KIRKLAND KNIGHTSBRIDGE, LLC, et al.,

                              Defendant(s).
_____/

Memorandum After Trial
_____

        This adversary proceeding centers around wine belonging to plaintiff 360 Viansa, LLC, a limited

liability company winery wholly owned by 360 Global, LLC.  The wine was delivered to defendant and

Chapter 11 debtor Kirkland Knightsbridge, LLC, pursuant to a written bottling agreement whereby Kirkland

would bottle the wine for Viansa.

        The court was perplexed by this case from the outset due to the completely divergent representations

made by the parties.  Viansa argued that its position that it had paid in full for the bottling services was so

1

1  irrefutable that the court should immediately and summarily grant the injunctive relief it sought ordering

2  Kirkland to turn over its wine. Kirkland, with equal vigor, argued that it had a lien on the wine for both unpaid

3  services and damages due from 360 Global and that the total it was due far exceeded the value of the wine.

4  Seeing no way to make any interim orders, and time appearing to be of the essence, the court set the matter

5  for expedited trial.

6      At the heart of the dispute was Viansa's vigorously contested assertion that it had paid Kirkland

7  $532,000.00 for the bottling. In resolving this fundamental dispute, the reason for the wildly divergent

8  arguments became clear to the court.

9      Viansa's owner, 360 Global, had entered into an agreement with Kirkland under which 360 Global

10  was obligated to provide "adequate cash funding" to Kirkland to allow Kirkland to run and operate its day to

11  day operations. The fundamental issue was whether the $532,000.00 in payments was for the bottling

12  invoices or were payments made pursuant to 360 Global's obligations to provide adequate cash funding.

13      Viansa's first argument was that the payments came from its bank account, so they had to be

14  considered payments from Viansa and not 360 Global. However, the uncontroverted evidence was that 360

15  Global treated Viansa's cash as its own, often paying its own expenses from Viansa's coffers and even

16  making a $600,000.00 investment using Viansa's funds. Viansa was clearly an alter ego of Global 360.

17      It should have been very easy for Viansa to prove that the payments it made were on Kirkland's

18  bottling invoices and not 360 Global obligations. Under Viansa's financial procedures, a check could only be

19  cut if it was linked to either an invoice or a check request. If the payments were on account of Kirkland's

20  bottling invoice, the check stub would reference the invoice. If the payments were on account of 360

21  Global's obligations, stub would reference a check request.

22      Viansa did not produce any check stubs for the payments in question. It claims that it was unable to

23  locate them due to sloppiness by its former controller. The court finds no merit at all to this claim and does

24  not believe Viansa. The court has little doubt that if the missing check stubs were to suddenly appear they

25  would show that the payments were made on behalf of 360 Global pursuant to its obligation to provide

26  Kirkland with adequate cash funding. The argument that these payments were for the wine bottling is just a

2

1  post-hoc attempt to re-characterize  them.  Making this argument, especially in light of the conveniently-

2  missing check stubs, has seriously undermined Viansa's credibility.

3         Viansa's second argument was that it owes nothing on account of Kirkland's invoice #3531, in the

4  amount of $343,655.75,  because Kirkland did not bottle the wines described in it.  This argument has no

5  merit.  First of all, the evidence established that $258,092.75 of the invoice was for wine which was actually

6  bottled.  Secondly, the invoice clearly indicates that the remainder of the invoice is for wine "to be bottled."

7  The contract provides that 100% of the total bill is due at the signing of the contract.  Thus, invoice #3531 is

8  valid and proper.

9         Viansa's last argument is that invoice #3567 in the amount of $256,045.00, for the purchase of 1249

10  cases of Kirkland's 2001 cabernet savignon wine, should be disallowed in its entirety because no oral or

11  written contract exists with respect to this wine.  This argument is patently without merit, as Viansa's own

12  witness testified that there was an oral contract at $89 per case, so at the very least $111,161.00 is due.

13         Whether or not $256,045.00 or $111,161.00 is due on invoice # 3567 boils down to a credibility

14  issue.  Global 360 was obligated to pursuant to its agreement with Kirkland to purchase at least $3 million in

15  wine from Kirkland at Kirkland's list "fob" prices.  Global 360's Executive Vice President for Sales and

16  Marketing alleges that he made a special oral arrangement to purchase the 2001 cabernet at $89 per case,

17  even though Kirkland's "fob" price was $205 per case.  Kirkland denies any such special deal.  In light of

18  Viansa/Global's credibility gap, the court finds that there was no special arrangement and that Kirkland

19  properly billed the 2001 cabernet at $205 per case.

20         For the foregoing reasons, it is clear that Viansa has not paid for its wine in Kirkland's possession.

21  Viansa will accordingly take nothing by its complaint, and Kirkland will be free to exercise its lien rights in the

22  wine.  There being no just reason for delay, judgment will be entered immediately notwithstanding the

23  counterclaim, which will be severed and tried separately.

24         This memorandum constitutes the court's findings and conclusions pursuant to FRCP 52(a) and

25  FRBP 7052.  Counsel for Kirkland shall submit an appropriate form of judgment forthwith.

26

3

1  Dated:  December 14, 2006

3  Alan Jaroslovsky
4  U.S. Bankruptcy Judge

2

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

4